# EXHIBIT B

Approved, SCAO

Original - Court (with instructions)
1st copy - Defendant (with instructions)
2nd copy - Plaintiff (with instructions)
3rd copy - Return (with proof of service)

| STATE OF MICHIGAN | | | |
|---|---|---|---|
| 18th | **JUDICIAL DISTRICT** | **AFFIDAVIT AND CLAIM** Small Claims | **CASE NO.** 19-80495 -SC |

Court address
36675 FORD RD  WESTLAND, MI 48185-2210
See additional notice and instructions on the back of plaintiff and defendant copies.

Court telephone no.
(734) 595-8720

1. **ADRIAN & BLISSFIELD RAIL ROAD COMPANY**
Plaintiff
38235 N EXECUTIVE DR
Address
WESTLAND, MI 48185-1971          (734) 641-2300
City, state, zip                              Telephone no.

2. **PROVISION POWER AND GAS, LLC**
Defendant
229 BROOKWOOD DR UNIT 14
Address
SOUTH LYON, MI 48178-1858        (616) 219-8099
City, state, zip                              Telephone no.

| NOTICE OF HEARING |
|---|
| For Court Use Only |

The plaintiff and the defendant must be in court on

Thurs           Dec 12, 2019
Day                    Date
at 1:30pm at ☒ the court address above.
Time

☐ _____
    Location

Process server's name          Fee paid: $ _____

☐ 3. A civil action between these parties or other parties arising out of the transaction or occurrence alleged in this complaint
has been previously filed in  ☐ this court   ☐ _____ Court.
It was given case number _____ and assigned to Judge _____
The action  ☐ remains  ☐ is no longer  pending.

'19 OCT 15 AM 11:01

4. I have knowledge or belief about all the facts stated in this affidavit and I am
☐ the plaintiff or his/her guardian, conservator, or next friend.   ☐ a partner.   ☒ a full-time employee of the plaintiff.

5. The plaintiff is  ☐ an individual.  ☐ a partnership.  ☒ a corporation.  ☐ a sole proprietor.  ☐ _____

6. The defendant is  ☐ an individual.  ☐ a partnership.  ☐ a corporation.  ☐ a sole proprietor.  ☒ an LLC _____

7. The date(s) the claim arose is/are  See COMPLAINT, attached.
Attach separate sheets if necessary

8. Amount of money claimed is $  1,500.00 _____. (Note: Plaintiff's costs are determined by the court and awarded as appropriate.
They are not part of the amount claimed.)

9. The reasons for the claim are:  See COMPLAINT, attached.

10. The plaintiff understands and accepts that the claim is limited to $6,000 by law and that the plaintiff gives up the rights to
(a) recover more than this limit, (b) an attorney, (c) a jury trial, and (d) appeal the judge's decision.

11. I believe the defendant ☒ is  ☐ is not  mentally competent. I believe the defendant ☒ is  ☐ is not  18 years or older.

12. ☐ I do not know whether the defendant is in the military service.  ☒ The defendant is not in the military service.
☐ The defendant is in the military service.

_Mark M. Dobronski_
Signature

Subscribed and sworn to before me on  October 15, 2019          Wayne _____ County, Michigan.

My commission expires:  November 14, 2025          Signature: _Karen Ment_
                                        Date                                    Deputy clerk/Notary public

Notary public, State of Michigan, County of  Wayne

The defendant(s) must be served by  1/14/20 .
                                                    Expiration date

DC 84  (6/19)  **AFFIDAVIT AND CLAIM, Small Claims**          MCL 600.8401 et seq., MCR 4.302, MCR 4.303, 50 USC 3931

# STATE OF MICHIGAN
### IN THE DISTRICT COURT FOR THE 18th JUDICIAL DISTRICT

**ADRIAN & BLISSFIELD RAIL ROAD COMPANY**, a Michigan railroad company,

        Plaintiff,

v.

**PROVISION POWER AND GAS, LLC,**
a Delaware limited liability company,

        Defendant.

Case No. *18-80495* -SC

---

Adrian & Blissfield Rail Road Company
By: Mark W. Dobronski, President
38235 North Executive Drive
Westland, Michigan 48185-1971
Telephone: (734) 641-2300
Email: mdobronski@abrailroad.com
Plaintiff *Pro Corpore*

---

## COMPLAINT

NOW COMES the Plaintiff, Adrian & Blissfield Rail Road Company, appearing *pro corpore* by its President, Mark W. Dobronski, and for its complaint against Defendants alleges:

Parties, Jurisdiction, and Venue

1. This matter arises under the Telephone Consumer Protection Act of 1991 (hereinafter "TCPA"), 47 U.S.C. § 227, *et seq.*

2. Plaintiff, ADRIAN & BLISSFIELD RAIL ROAD COMPANY ("Railroad"), is a railroad company organized and existing under the laws of the State of Michigan, which is engaged in interstate commerce as a Class III railroad common carrier, with its principal business office located in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, defendant PROVISION POWER AND GAS, LLC

("Defendant"), is a limited liability company organized and existing under the laws of the State of

Delaware, and is qualified to do business in the State of Michigan with a registered office being

location in South Lyon, Oakland County, Michigan.

4. This Court has jurisdiction over the subject matter of this complaint and venue is proper

in this Court, pursuant to 47 U.S.C. § 227(c)(5) and M.C.L. § 600.1629(1)(b)(I), as the tortious or

illegal conduct complained of occurred in this judicial district.

<u>General Allegations</u>

5. In response to widespread public outrage over intrusive telemarketing calls to homes and

businesses, the United States Congress acted to prevent entities, like Defendant, from invading

American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

6. According to the Federal Communications Commission ("FCC"), "Unwanted calls and

texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every

month on both telemarketing and robocalls."

7. Congress explicitly found that robo-calling is an invasion of privacy.

8. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary

sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They

wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of

bed; they hound us until we want to rip the telephone right out of the wall... these computerized

telephone calls threaten our personal safety... These machines are out of control, and their use is

growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the*

*Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17

FCC Rcd. 17459 at note 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

9. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – ...

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); . . . or

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States; . . . ."

10. Pursuant to authority delegated to it under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

11. The TCPA regulations, at 47 C.F.R. § 64.1200(a), promulgate in relevant part:

"No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...

(i) To any emergency telephone line, including any 911 line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law

enforcement agency; . . . or

(iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. . . .

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(I) through (iii) of this section, other than a call made with the ***prior express written consent*** of the called party . . . ." [Emphasis added.]

12.   The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION.   A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this ***subsection or the regulations prescribed under this subsection*** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages ***for each such violation***, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

13.   Plaintiff is a law enforcement agency recognized by, *inter alia,* the State of Michigan Commission on Law Enforcement Standards and the United States Department of Justice, Federal Bureau of Investigation.

14.   Plaintiff employs state-commissioned railroad police officers pursuant to, *inter alia,*

- 4 -

M.C.L. § 462.367, and which railroad police officers have national interstate law enforcement authority pursuant to 49 U.S.C. § 28101.

15. Plaintiff's telephone number 734-641-2300 is an emergency telephone line used for contacting Plaintiff's police department. As such, Plaintiff's telephone number falls within the proscriptions of 47 U.S.C. § 227(b)(1)(A)(i).

16. Plaintiff's telephone number 734-641-2300 is the telephone number assigned to Plaintiff's specialized mobile radio service and Plaintiff's paging service. As such, Plaintiff's telephone number falls within the proscriptions of 47 U.S.C. § 227(b)(1)(A)(iii).

17. Plaintiff's telephone number 734-641-2300 is listed on the National Do Not Call Register maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least 2004 and at all times relevant hereto.

18. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

19. At no time relevant hereto has Plaintiff or any other authorized person provided prior express written consent to Defendant to initiate any telephone call to Plaintiff's telephone line.

20. At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

21. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

22. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA

- 5 -

and its own regulations.

23. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services.

24. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D.Mid. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

25. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

26. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

27. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

- 6 -

28. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

29. Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone line resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

30. As a result of the telephone calls described herein, Plaintiff suffered an invasion of privacy.

31. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

32. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.

**COUNT I**

33. Plaintiff incorporates the allegations of paragraphs 1 through 32, *supra*.

35. On October 10, 2019, at approximately 4:34 P.M., Defendant initiated or caused to be initiated a telemarketing call to Plaintiff's telephone line.

- 7 -

36. The caller identification number displayed was 616-219-8099 and the caller identification name displayed was "MICHIGAN CALL".

37. The telephone line was answered by Plaintiff's voice mail system, at which time there was a 3-4 second pause, followed by a click sound. This characteristic of an automatic telephone dialing system.

38. After the click sound, a female voice was heard stating "Hello, my name is Audrey. I am calling you regarding last month's gas bill. I am going to need a call back as soon as possible...." The message left seemed to imply urgency regarding payment of Plaointiff's gas utility bill.

39. On October 14, 2019, at approximately 10:22 A.M., Plaintiff's representative returned the message left by "Audrey". Plaintiff's representative spoke with a "Melissa" who advised that she was Audrey's supervisor and Audrey was unavailable. Melissa explained that she needed information from Plaintiff's gas bill in order to save Plaintiff money.

40. The telephone call alleged in paragraphs 35 through 37, inclusive, was in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(a) and 47 C.F.R. § 64.1200(a)(1), as Defendant initiated a telephone call using an automated telephone dialing system or an artificial or prerecorded voice to Plaintiff's telephone line, which is an emergency telephone line and a telephone number assigned to a paging service and a specialized mobile radio service or other radio common carrier service, with the prior express written consent of the Plaintiff.

43. The aforesaid violation of the TCPA by the Defendant was wilful or knowing.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against Defendants, and each of them jointly and severally, as follows:

- 8 -

A.  Damages in the amount of $500.00 for said call, which amount shall be trebled because the violation was willful or knowing, bringing the sum total of damages to $1,500.00;

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action; and,

C.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

**ADRIAN & BLISSFIELD RAIL ROAD COMPANY**

Dated:   October 15, 2019

By:  Mark W. Dobronski
Its:   President

ADRIAN & BLISSFIELD RAIL ROAD COMPANY
38235 North Executive Drive
Westland, Michigan 48185-1971
Telephone: (734) 641-2300
Email: mdobronski@abrailroad.com
Plaintiff *Pro Corpore*

## VERIFICATION

State of Michigan    )
                     ) ss;
County of Wayne      )

MARK W. DOBRONSKI, being first duly sworn, says:

1. I am the President of Adrian & Blissfield Rail Road Company, a Michigan railroad company, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

2. I have read the Complaint in the foregoing matter, and I know the contents thereof. The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

3. If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

Further, affiant sayeth naught.

_____
Mark W. Dobronski

Subscribed and sworn to before me
this __15th__ day of October, 2019.

_____
Karen E. Merritt
Notary Public
State of Michigan, Wayne County
My Commission Expires: November 15, 2025

- 10 -

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE 22ND JUDICIAL CIRCUIT

**MARK W. DOBRONSKI,**
an individual,

        Plaintiff,

v.

**KEROLES ENTERPRISES LLC,**
a California limited liability company,
d/b/a **UNITED ASSET ACCEPTANCE,**
d/b/a **UAA LAW FIRM;** and,
**MARY FOUAD KEROLES,**
an individual;

        Defendants.

Case No.   20-000556-NZ    -NZ

JUDGE PATRICK J. CONLIN, JR.

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: MarkDobronski@yahoo.com
Plaintiff *In Propria Persona*

---

## COMPLAINT

Plaintiff, Mark W. Dobronski, appearing *in propria persona*, and for his Complaint says:

### Parties, Jurisdiction, and Venue

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of Lima Township, Washtenaw County, Michigan, and has a place of business in the

City of Westland, Wayne County, Michigan and in Lima Township, Washtenaw County, Michigan.

3. Upon information and belief, the Defendant KEROLES ENTERPRISES LLC ("ENTERPRISES") is a limited liability company organized and existing under the laws of the State of California, and has its principal office located at 1685 East Beringer Drive, San Jacinto, California 95283.

4. Upon further information and belief, Defendant ENTERPRISES does business under the fictitious business name UNITED ASSET ACCEPTANCE.

5. Upon further information and belief, Defendant ENTERPRISES represents to consumers that their business name is UAA LAW FIRM, which name does not appear to be registered with any authority, and falsely represents to consumers that they are a law firm.

6. Upon information and belief, the Defendant MARY FAUOD KEROLES ("KEROLES"), is an individual, is of the age of majority, is mentally competent, is not in the military service, resides at 1685 East Beringer Drive, San Jacinto, California 95283, purports himself to be the owner and chief executive officer of co-defendant ENTERPRISES, and orchestrated, directed, and participated in the tortious and/or illegal conduct complained of herein.

7. This Court has jurisdiction over the subject matter of this complaint and venue is proper in this Court, pursuant to 47 U.S.C. § 227(c)(5) and M.C.L. § 600.1629, as the tortious and illegal conduct complained of herein occurred in Washtenaw County, Michigan.

General Allegations

8. In response to widespread public outrage over telemarketers, the United States Congress acted to prevent entities, like Defendants, from invading American citizen's privacy and to prevent abusive "robo-calls."

- 2 -

9. According to the Federal Communications Commission ("FCC"), "[u]nwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

10. Congress explicitly found that robo-calling is an invasion of privacy: "Evidence compiled by Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator, to be a nuisance and an invasion of privacy." Section 2 of Pub L. 102-243.

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459 at note 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

12. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during the calendar month of February 2020 alone there were 4.8 billion robocalls initiated across the United States -- that works out to 166.3 million robocalls each day; 6.9 million robocalls each hour; 1,900 robocalls per second, or 14.7 robocalls per person. [Source: www.robocallindex.com].

13. Congress found that telemarketing fraud has become a problem of such magnitude that the resources of the Government alone are not sufficient to ensure adequate consumer protection

- 3 -

from such fraud; consumers and others are estimated to lose in excess of $40 billion a year in

telemarketing fraud; and consumers are victimized by other forms of telemarketing deception and

abuse.

14. In enacting the TCPA, Congress intentionally created a legally enforceable bounty

system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act

as "private attorneys general" in enforcing federal law.

15. The TCPA, at 47 U.S.C. 227(b), promulgates:

"(b) Restrictions on use of automated telephone equipment

(1) Prohibitions  It shall be unlawful for any person within the United
States, or any person outside the United States if the recipient is
within the United States—

(A) to make any call (other than a call made for emergency purposes
or made with the prior express consent of the called party) using any
automatic telephone dialing system or an artificial or prerecorded
voice—

(i) to any emergency telephone line (including any "911" line and any
emergency line of a hospital, medical physician or service office,
health care facility, poison control center, or fire protection or **law
enforcement agency**); . . . or

(iii) to any telephone number assigned to a **paging service, cellular
telephone service, specialized mobile radio service, or other radio
common carrier service,** or any service for which the called party is
charged for the call, unless such call is made solely to collect a debt
owed to or guaranteed by the United States; . . .

(D) to use an automatic telephone dialing system in such a way that
**two or more telephone lines of a multi-line business are engaged
simultaneously.**" [Emphasis added.]

16. Pursuant to authority delegated to it under the TCPA at 47 U.S.C. § 227(b)(2), the FCC

has adopted regulations to implement and carry out the TCPA.

- 4 -

17. The TCPA regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice;

(i) To any emergency telephone line, including any 911 line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or **law enforcement agency**; . . .

(iii) To any telephone number assigned to a **paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service**, or any service for which the called party is charged for the call. . .

(5) Use an automatic telephone dialing system in such a way that **two or more telephone lines of a multi-line business** are engaged simultaneously. . .

(b) All artificial or prerecorded voice telephone messages shall:

(1) At the beginning of the message, **state clearly the identity of the business**, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated;

(2) During or after the message, **state clearly the telephone number** (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign. . . ." [Emphasis added.]

- 5 -

18. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

19. In addition, Congress has enacted the FDCPA to eliminate abusive debt collection practices by debt collectors.

20. The FDCPA, at 15 U.S.C. § 1692d, promulgates:

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader. . .

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's

- 6 -

identity."

21. The FDCPA, at 15 U.S.C. 1692e, promulgates:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . .

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . ."

22. The FDCPA, at 15 U.S.C. § 1692k, provides for a private right of action, as follows:

"(a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A)in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000. . .; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . ."

23. Plaintiff is the President and Chief Executive Officer of Adrian & Blissfield Rail Road Company ("ADBF"), an interstate railroad common carrier.

24. ADBF is a law enforcement agency recognized by, *inter alia,* the State of Michigan Commission on Law Enforcement Standards and the United States Department of Justice, Federal

Bureau of Investigation.

25. ADBF employs state-commissioned railroad police officers pursuant to, *inter alia,* M.C.L. § 462.367, and which railroad police officers have national interstate law enforcement authority pursuant to 49 U.S.C. § 28101.

26. ADBF's telephone number 734-641-2300 is an emergency telephone line used for contacting ADBF's police department. As such, ADBF's telephone number 734-641-2300 falls within the proscriptions of 47 U.S.C. § 227(b)(1)(A)(i).

27. ADBF's telephone number 734-641-2300 is the telephone number assigned to ADBF's specialized mobile radio service and ADBF's paging service. As such, ADBF's telephone number 734-641-2300 falls within the proscriptions of 47 U.S.C. § 227(b)(1)(A)(iii).

28. ADBF's telephone number 734-641-2300 is listed on the National Do Not Call Register maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least June 1, 2004 and at all times relevant hereto.

29. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

30. Plaintiff is the subscriber and/or a customary user of each of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. *See Leyse v. Bank of America Nat. Ass'n*, 804

F.3d 316, 324 (C.A.3 2015).

31.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized telephone contact from the Defendants.

32.  At no time relevant hereto has Plaintiff or any other authorized person provided prior express consent or prior express written consent to Defendants to initiate telephone calls to ADBF's telephone number using automated telephone dialing system and/or prerecorded voice messages.

33.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

34.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

35.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

36.  It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation.  A corporate officer or director is,

in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

37.    Plaintiff's home, office, and wireless telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some of the calls received by Plaintiff are blatant scams, including, *inter alia,* calls purportedly from the Internal Revenue Service advising that arrest warrants have been issued against Plaintiff; calls advising that Plaintiff has won a "free" Caribbean resort vacation; and, calls advising that Plaintiff's credit card interest rate is being lowered to zero percent.

38.    For each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone number, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

39.    For each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone, Plaintiff suffered the injury of the occupation of Plaintiff's telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

40.    For each and every call placed without consent by Defendants or Defendants' agents to Plaintiff's telephone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

41.    Each and every call placed without consent by Defendants or Defendants' agents to

- 10 -

Plaintiff's telephone resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone and his telephone services.

42. As a result of the telephone calls described herein, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

43. The conduct of Defendants or Defendants' agents complained of herein caused injury and damage to Plaintiff, including, *inter alia,* the annoyance and interruption of Plaintiff's personal and business activities to respond to Defendants' or Defendants' agents' telephone calls; the tieing up of Plaintiff's business telephone lines, thereby blocking legitimate callers from being able to get through and engage in essential communications with Plaintiff, including emergency calls; and, the waste of Plaintiff's resources to respond to Defendants' or Defendants' agents' telephone calls.

44. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

45. Further, Defendants' or Defendants' agents' conduct alleged herein as being willful is clearly evidenced by, *inter alia*, the repeated calls.

Allegations Specific to this Complaint

46. Defendants or Defendants' agents are apparently engaged in the business of a collection agency and utilize automated telephone dialing systems and prerecorded voice messages to contact consumers regarding their debts.

47. On April 1, 2020, during the COVID-19 national emergency, Plaintiff was working from his home office overseeing the ADBF rail operations.

48.  On April 1, 2020, at 4:39 P.M., all four (4) of ADBF's incoming telephone lines (telephone number 734-641-2300) began to ring simultaneously.

49.  Upon answering each incoming call, the caller identification number would display 831-778-4167, Plaintiff would receive a "click" sound, and then the call would disconnect.

50.  As Plaintiff would hang up an incoming telephone line to take the next line, the line that just was hung up would ring again. Each time, the same pattern of events would transpire.

51.  A total of twelve (12) such incoming calls were received during a one minute period, which is indicative of an automated telephone dialing system being used.

52.  On April 7, 2020, at 11:32 A.M., ADBF's telephone line (telephone number 734-641-2300) rang. The caller identification number displayed was 831-778-4167.

53.  Upon Plaintiff answering the incoming call, a prerecorded message in a female voice stated:

> "This is not a solicitation. This is a final attempt to offer you an opportunity to prevent a court filing attached to your name. If you would like to speak with one of our representatives to discuss your case press the number one on your dial pad. Thank you."

54. Plaintiff pressed "1" to speak to a representative and was connected to an individual who identified himself as Joe Phillips. Upon questioning, Phillips stated that he was with "UAA Law Firm" in Santa Ana, California. Plaintiff asked for clarification as to what "UAA" might stand for, and was refused. Plaintiff asked to speak to one of the attorneys, and was refused. Plaintiff asked for the address to send a cease and desist letter, and was refused. Phillips hung up.

55.  It is a misdemeanor criminal offense under Michigan law, specifically M.C.L. § 750.540e(e), for any person to maliciously use any service provided by a telecommunications service provider with intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy another

person, or to disturb the peace and quiet of another person by repeatedly initiating a telephone call and, without speaking, deliberately hanging up or breaking the telephone connection as or after the telephone call is answered.

### COUNT I
### VIOLATION OF THE TCPA - 47 C.F.R. 64.1200(a)(1)

56. Plaintiff incorporates the allegations of paragraphs 1 through 55, *supra.*

57. Each of 13 telephone calls alleged in paragraphs 47 through 54, *supra*, were in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(a)(1), as Defendant or Defendant's agent initiated a telephone call using an automatic telephone dialing system to an emergency line of a law enforcement agency or alternately to a telephone number assigned to a paging service, specialized mobile radio service, or other radio common carrier service, and there was no emergency, and Defendant did not have prior express consent of the called party.

58. The aforesaid violations of the TCPA were wilful and/or knowing.

### COUNT II
### VIOLATION OF THE TCPA - 47 C.F.R. 64.1200(a)(5)

59. Plaintiff incorporates the allegations of paragraphs 1 through 58, *supra.*

60. Each of the 12 telephone calls alleged in paragraphs 47 through 51, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 227(b)(1)(D) and 47 C.F.R. § 64.1200(a)(5), as Defendant or Defendant's agent used an automatic telephone dialing system in such a way that two or more telephone liens of a multi-line business were engaged simultaneously.

61. The aforesaid violations of the TCPA were wilful and/or knowing.

### COUNT III
### VIOLATION OF THE TCPA - 47 C.F.R. 64.1200(b)(1)

59. Plaintiff incorporates the allegations of paragraphs 1 through 58, *supra.*

60. The telephone call alleged in paragraphs 52 through 53, *supra*, was in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(1), as the artificial or prerecorded voice message did not identify the business or entity responsible for initiating the call.

61. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - 47 C.F.R. 64.1200(b)(2)

62. Plaintiff incorporates the allegations of paragraphs 1 through 61, *supra.*

63. The telephone call alleged in paragraphs 52 through 53, *supra*, was in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(2), as the artificial or prerecorded voice message did not, during or after the message, state clearly the telephone number of such business or entity.

64. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT V
## VIOLATION OF FDCPA

65. Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

66. The telephone calls alleged in paragraphs 47 through 54, *supra*, were in violation of the FDCPA, specifically under 15 U.S.C. § 1692d, as the Defendant caused a telephone to ring and engaged Plaintiff in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called name, and the telephone calls were placed without the meaningful disclose of the caller's identity; and, additionally or alternately, under 15 U.S.C. § 1692e, as the debt collector made a false representation that the communication is from an attorney, and used a business, company, or organization name other than the true name of the debt collector's business, company, or organization.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a

- 14 -

judgment for Plaintiff and against the Defendant, as follows:

     A.    1. As to Count I: Damages in the amount of $500.00 for the each of the 13 TCPA violations alleged, which amount shall be trebled because the violations were wilful or knowing; for total damages of $19,500.00.

        2. As to Count II: Damages in the amount of $500.00 for each of the 12 TCPA violations alleged, which amount shall be trebled because the violations were wilful or knowing; for total damages of $18,000.00.

        3. As to Count III: Damages in the amount of $500.00 for the TCPA violation alleged, which amount shall be trebled because the violations were wilful or knowing; for total damages of $1,500.00.

        4. As to Count IV: Damages in the amount of $500.00 for the 5 TCPA violation alleged, which amount shall be trebled because the violations were wilful or knowing; for total damages of $1,500.00.

        5. As to Count V: Damages in the amount of $1,000.00 for the violations of the FDCPA alleged.

The cumulative total amount of damages claimed in this action is $41,500.00, and in the event of default judgment is the sum certain that will be sought.

     B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

     C. Interest accruing from the date of filing until paid at the statutory rate; and,

     D. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: May 18, 2020

Mark W. Dobronski

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

- 16 -

## VERIFICATION

State of Michigan    )
                         ) *ss;*

County of Wayne    )

    MARK W. DOBRONSKI, being first duly sworn, says:

    1.  I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

    2.  I have read the Complaint in the foregoing matter, and I know the contents thereof.  The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

    3.  If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

    Further, affiant sayeth naught.

 

                                       _____
                                     Mark W. Dobronski

Subscribed and sworn to before me
this  **18th**  day of May, 2020.

_____
Sandra J. Clarke
Notary Public
State of Michigan, Lenawee County
Acting in Wayne County
My Commission Expires November 23, 2023