Alvarez v. Fiesta Nissan, Inc., Slip Copy (2026)

2026 WL 202930

2026 WL 202930
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, McAllen Division.

David ALVAREZ, Plaintiff,

v.

FIESTA NISSAN, INC., Defendant.

CIVIL ACTION NO. 7:25-CV-00343
|
Signed January 26, 2026

**Attorneys and Law Firms**

Christopher Berman, Miami, FL, Kayla Nicole Kershen, Pro Hac Vice, Andrew John Shamis, Shamis & Gentile, P.A., Miami, FL, for Plaintiff David Alvarez.

Brent A. Bishop, Atlas, Hall & Rodriguez, LLP, McAllen, TX, Cory William Eichhorn, Pro Hac Vice, Holland & Knight, Miami, FL, for Defendant Fiesta Nissan, Inc.

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

Randy Crane, Chief United States District Judge

 **\*1** Before the Court is Defendant Fiesta Nissan's Motion to Dismiss. [Dkt. No. 18]. After careful consideration, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's motion. Specifically, considering the ordinary language of the statute, the Court finds that "telephone calls" in the context of § 227(c)(5) include text messages; Defendant's motion to dismiss for lack of capacity to sue is **DENIED**. Otherwise, the Court finds that Plaintiff has not presented sufficient facts to establish that there is a substantial likelihood that he will suffer the same injury in the future. Defendant's motion to dismiss Plaintiff's claim for injunctive relief is **GRANTED** and Plaintiff's injunctive claim is **DISMISSED WITHOUT PREJUDICE**.

**BACKGROUND**

Beginning in February 2025, Defendant Fiesta Nissan, Inc., an automobile dealership, sent Plaintiff David Alvarez a series of marketing text messages. According to Plaintiff, these texts—like countless similar text messages received by Americans every day—were unwanted and unauthorized. With one difference, however: Plaintiff says that, back in 2008, he placed his phone number on the National Do-Not-Call Registry.[1] Under regulations implementing the Telephone Consumer Protection Act (TCPA), "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry ...." 47 C.F.R. § 64.1200(c). If they do, Congress has provided a private right of action in the TCPA: "A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity," despite that person's phone number being on the Do-Not-Call Registry, may bring an action for damages and/or injunction. 47 U.S.C.A. § 227(c)(5) (emphasis added). Plaintiff has filed this putative class action under that cause of action, alleging that Defendant initiated more than one telephone solicitation (in the form of text messages) to Plaintiff and class members who registered their respective telephone numbers on the Do-Not-Call-Registry. *See* Dkt. No. 1, at p.8.

The TCPA was passed in 1991, one year before the advent of the text message.[2] The Do-Not-Call Registry, however, was not created until 2003, and since then the FCC has interpreted the TCPA to include text messages. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (F.C.C. 2003) ("[The TCPA] encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls."); 47 C.F.R. § 64.1200(e) (applying that ruling to the do-not-call restriction in § 64.1200(c)). For the last twenty-three years, this interpretation has been afforded some deference; courts across the country, including the Fifth Circuit and the Supreme Court, have analyzed other portions of the TCPA without contesting that "calls" include both voice calls and text messages.[3] "Nor," as the Sixth Circuit then pointed out, "in light of well-established administrative-law jurisprudence, could they [contest it] legitimately." *Keating v. Peterson's Nelnet, LLC*, 615 Fed. Appx. 365, 370 (6th Cir. 2015). Under the *Chevron* doctrine, courts "unhesitatingly afford[ed] deference to the agency holding that a text message should be treated as a 'call' for purposes of the TCPA." *Id.* at 371 (citing *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

**\*2** But *Chevron* deference is no more. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S.Ct. 2244, 2267, 219 L.Ed.2d 832 (2024). Furthermore, the Supreme Court has recently ruled that "[i]n an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct." *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 145 S. Ct. 2006, 2015, 222 L.Ed.2d 405 (2025). No longer bound by the agency's interpretation, the district courts "instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.*

Considering this, Fiesta Nissan's motion to dismiss presents two straightforward questions: Are text messages truly "telephone calls" for purposes of the cause of action in § 227(c)(5)? If they are not, Fiesta Nissan moves to dismiss based on a lack of capacity to be sued. If they are, Fiesta Nissan argues that at the very least Plaintiff lacks the Article III standing necessary to seek injunctive relief.

**STANDARD OF REVIEW**

There is no subsection of Rule 12(b) that specifically authorizes a motion to dismiss based on the lack of capacity to be sued. However, Rule 12(b)(6) motions to dismiss for failure to state a claim "are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). To survive a 12(b)(6) motion to dismiss, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). "A court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

**I. Administrative Procedure Act (APA) Standards**

Additionally, Plaintiff argues that the Court must conduct its review of the statute under the deferential "arbitrary-and-capricious" standard laid out in Administrative Procedure Act (APA). In support, Plaintiff points to language in the Supreme Court's recent *Seven County* decision, which states that "when an agency exercises discretion granted by a statute, judicial review is typically conducted under the [APA]'s deferential arbitrary-and-capricious standard," under which "a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168, 145 S. Ct. 1497, 1511, 221 L.Ed.2d 820 (2025).

However, there are several reasons why this standard is inapt here. First, in the immediately preceding line, the Supreme Court in *Seven County* makes clear that "[a]s a general matter, when an agency interprets a statute, judicial review of the agency's interpretation is *de novo*." *Id.* Here this Court is not tasked with reviewing a direct exercise of agency discretion, such as a rulemaking or order—rather, it is merely interpreting a statutory cause of action to decide whether a certain act is encompassed by it. In fact, the Supreme Court in *McLaughlin* took care to make this precise distinction:

> **\*3** "Judicial review in enforcement proceedings of course may also include review of whether the rule or order was arbitrary and capricious under the APA or otherwise was unlawful. Because this case involves interpretation of a statute, *we focus here on that scenario*."

*McLaughlin*, 145 S. Ct. at 2015 n.2 (emphasis added). The Court then instructed the district court, when faced with an enforcement action, to "determine the meaning of the law under ordinary principles of statutory interpretation." *McLaughlin*, 145 S. Ct. at 2015. How can the district court determine ordinary meaning if it can only consider "whether the agency action was reasonable"? *Seven County*, 145 S. Ct. at 1511.

The reality is the Court here is presented with a federal statute and an ambiguity, the resolution of which is "[t]he very point of the traditional tools of statutory construction." *Loper Bright*, 144 S. Ct. at 2266. Although this Court must "afford[ ] appropriate respect to the agency's interpretation," *McLaughlin*, 145 S. Ct. at 2015, that does not mean that the court must *defer* to that interpretation based on mere reasonableness. In fact, "in the business of statutory interpretation," *Loper Bright* commands exactly the opposite. *Loper Bright*, 144 S. Ct. at 2266 ("[I]f it is not the best, it is not permissible.").

2026 WL 202930

## ANALYSIS

### II. Text Messages and § 227(c)(5).

The Court is aware of only one other court in this Circuit that has considered the scope of the § 227(c)(5) cause of action post-*McLaughlin*, and none that have analyzed the language directly.[4] *See Duron v. Kings Capital Holding LLC*, No. 3:25-cv-00149-DCG, 2026 LX 68851 (W.D. Tex. Jan. 13, 2026) (report and recommendation relying on precedent); *see also, Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-00538-RP, 2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025) (analyzing the regulation at 47 C.F.R. § 64.1200(d), rather than the statute). Moreover, other courts have contested whether the FCC ever actually explicitly interpreted "telephone calls" to include text messages in the first place. *See Jones v. Blackstone Med. Services, LLC*, 792 F. Supp. 3d 894, 900–901 (C.D. Ill. 2025) ("[T]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).").[5] Regardless, although this Court affords respect to the FCC's interpretation of the terms used in the TCPA, it remains incumbent upon district courts to "independently determine for itself whether the agency's interpretation of a statute is correct." *McLaughlin*, 145 S. Ct. at 2015. The court begins, then, with the text, before moving onto statutory context.

### a. Statutory Text

 **\*4** The true problem in this case "comes from the fact that technology has done more to change [telephone]s than [Congress] has done to change § [227(c)(5)]." *In re Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987) (Easterbrook, J.). Section 227(c) does not define the term "telephone call," nor does any other part of the statute. Where a statute leaves terms undefined, courts must "accord those terms their 'ordinary, contemporary, common meaning.' " *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024) (quoting *Rest. L. Ctr. v. United States Dep't of Lab.*, 115 F.4th 396, 403–04 (5th Cir. 2024)). In today's regular parlance, of course, no ordinary person would use the word "telephone call" to refer to a text message. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("No ordinary user of the English language would write the sentence 'John called Sue' intending to mean "John sent a text message to Sue'.") But this Court is cognizant that a usage which

seems obvious *now* is not always a reflection of the *original* meaning of the statute. The use of the verb "to text"—now ubiquitous—had no such meaning in 1991. However, that does not mean it could not have been encompassed by the meaning of "telephone call." Indeed, the term "text message" only seems distinct from the idea of a "telephone call" today because the former term developed in our language specifically to distinguish a text communication from a voice communication.

These later developments have no bearing on our analysis, as "every statute's meaning is fixed at the time of enactment." *Loper Bright*, S.Ct. 2244 at 2266 (quotation omitted). And that meaning can be broad. Indeed, "[i]n their full context, words mean what they conveyed to reasonable people at the time they were written—with the understanding that general terms may embrace later technological innovations." *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring) (quoting A. SCALIA & B. GARNER, READING LAW 16 (2012)). For that reason, "a 2012 statute referring to aircraft, if still in effect in 2112, would embrace whatever inventions the label fairly embraces, even inventions that could not have been dreamed of in 2012." SCALIA & GARNER, *supra*, at 16.

The question, then, is whether the concept of a "text message" is fairly embraced by the meaning of "telephone call" in 1991. Looking to a dictionary contemporaneous with the TCPA's passage, the relevant definition of "call" was "to get or try to get into communication by telephone." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 197 (1990). This language is capacious. Thus, a plain-language reading suggests that to send a text message is to "try to get or to get into communication by telephone."

This is usually where courts stop. Importantly, however, Fiesta Nissan points out that the word "call" is modified by "telephone" in Section 227(c)(5). The definition of "telephone" at the time of the TCPA's passage was "an instrument for producing sounds at a distance; *specif* : one in which sound is converted into electrical impulses for transmission by wire." *Id.* at 1212. And when used as a verb, to "telephone" is to "communicate by telephone," to "send by telephone," or to "speak to by telephone." *Id.* This modification, they argue, precludes the complete phrase "telephone call" from encompassing the concept of a text message, as telephones are defined by their ability to transmit sound. Dkt. No. 29, at p.7.

**Alvarez v. Fiesta Nissan, Inc., Slip Copy (2026)**

2026 WL 202930

Although it is a closer call, the Court finds there is nothing in the meaning of "telephone" that excludes the function of a text message. Remarkably relevant here is the classic case of *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987). In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain "one mower" and "one hay loader." *Id.* at 1091–92. Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn "mowers" were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and "hay loaders" were replaced by automatic bailing/tying machines. *Id.* at 1092–93. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that a " 'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item (e.g., "a Massey-Ferguson Mower, Model GY– 2589, manufactured in 1935, serial number 3875808") but a *class of things* that share some important feature." *Id.* at 1092 (emphasis added). Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower', ... because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay." *Id.* at 1093.

**\*5** The Court finds this reasoning persuasive here. Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (quotation omitted). Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. SCALIA & GARNER, *supra*, at 16. Later meaning ascribed to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls." That society does not today has no bearing here.

This reading is bolstered by the technology's history. First, it is known that cellphones and text-messaging services displaced pagers (or "beepers") as everyday technology.[6] That was largely because pagers and cellphones served many of the same uses. *See* Jeffrey Selingo, *The Bell Is Tolling For the Beeper*, N.Y. TIMES, April 11, 2002, at G4 ("[M]any ... are buying two-way pagers like the BlackBerry, which allow them to answer a message without searching for a phone."). By 1990, pagers could display alphanumeric messages, which were sent by *calling* the pager from a telephone. *See Radio Pager With Display*, N.Y. TIMES, July 6, 1981, at D3; Calvin Sims, *Checking Your Watch For Messages, Too*, N.Y. TIMES, Nov. 8, 1989, at D9. Although Plaintiff likely received the text messages at issue via a modern cellphone data messaging service, in 1991 he might very well have received messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former?

At bottom, it is true that a telephone in 1991 was an instrument "for producing sounds at a distance." So is a telephone today. But that instrument may also send messages via "calls." Thus, to make a "telephone call," for purposes of § 227(c)(5), is to "to get or try to get into communication" with an "instrument for producing sounds at a distance." A text message therefore falls reasonably within the literal language of the statute.

### b. Statutory Context

Although the literal meaning of the phrase is clear on its own, "text may never be taken out of context." *United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018). That is why "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 492, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015) (quotation omitted). With this in mind, two reasons stand out as to why the subsection containing § 227(c)(5), and the broader structure of the Act, counsel reading the cause of action to include "text messages."

First, Section 227(c)(5) explicitly confers a private right of action for "violation of the regulations prescribed *under this subsection*[.]" 47 U.S.C. § 227(c)(5). As Plaintiff points out, section 227(c)(1) and (2) make clear that the

subsection was included to direct the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object[,]" and to promulgate regulations in furtherance of that interest. 47 U.S.C. §§ 227(c)(1)-(2) (emphasis added). And the TCPA defines "telephone solicitations": the "initiation of a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *Id.* at § 227(a) (4) (emphasis added). This language is broad, coloring the cause of action and the entire subsection it enforces. Congress added that definition later, after text messaging had become commonplace. Some courts have interpreted that amendment to § 227(c)(1)—and concurrent lack thereof to § 227(c)(5)— as evidence that Congress "intend[ed] different meanings" for the two provisions. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) (quotation omitted). But those two provisions are within the same subsection. An equally plausible implication may be drawn that Congress believed its definition of "telephone solicitation" in the directive of the subsection, combined with the FCC's interpretation, was enough to broaden the subsection's cause of action to include *all* telephone solicitations. Indeed, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025).

 **\*6** Second, the Court cannot ignore the fact that Section 227(b) of the TCPA uses the same term—"telephone call"— as it does in § 227(c). As mentioned previously, the FCC as well as myriad courts have for years interpreted "telephone call" in § 227(b) to include text messages. *See supra* note 3. Importantly, that usage has been ratified by Congress. *See Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in § 227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). As the Supreme Court has held, "[w]here, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)). This ratification is, of course, only

"conclusive" as to § 227(b); that said, it remains strongly persuasive as to a subsection of the same statute that uses identical language.

In sum, both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative "telephone calls" to persons on the National Do-Not-Call List. This Court declines to dismiss Plaintiff's claim for lack of capacity to sue.

### III. Article III Standing

Fiesta Nissan argues in the alternative that Plaintiff's injunctive claim should be dismissed because Plaintiff lacks Article III standing to seek injunctive relief. Specifically, Fiesta Nissan argues that "Plaintiff does not allege an imminent threat of future text messages or even the possibility of such text messages." Dkt. No. 18, at p.11.

Section 227(c)(5) explicitly permits a plaintiff to bring "an action based on a violation of [§ 227(c)] ... to enjoin such violation." 47 U.S.C. § 227(c)(5)(A). However, although a statute might authorize injunctive relief, the Court is not "mechanically obligated to grant an injunction for every violation of law." *United States v. Marine Shale Processors*, 81 F.3d 1329, 1360 (5th Cir. 1996) (quoting *Weinberger v. Carlos Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). Rather, the Court "must exercise its discretion with an eye to the congressional policy as expressed in the relevant statute." *Id.*

Regarding standing for injunctive relief, the Fifth Circuit has explained that

> "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred."

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Several courts in this circuit have addressed this issue in similar cases, finding that when there is no evidence that the defendant has called or attempted to call the plaintiff's phone "since the ... call complained about in th[e] lawsuit," there can be "no imminent threat of repeated violations of the TCPA." *Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *6 (S.D. Tex. Apr. 24, 2019), *adopted by* 2019 WL 2103423 (S.D. Tex. May 14, 2019); *see also Hunsinger v. 204S6TH LLC*, No. 3:21-CV-2847-G-BH, 2022 WL 1110354, at *10

*Alvarez v. Fiesta Nissan, Inc.*, Slip Copy (2026)

2026 WL 202930

(N.D. Tex. Mar. 23, 2022), *adopted by* 2022 WL 1102864 (N.D. Tex. Apr. 13, 2022); *Internal Med. Rural Health Clinic of New Albany, P.A. v. Langmas Grp., Inc.*, No. 3:18-CV-00192-GHD-RP, 2019 WL 1905165, at *1 (N.D. Miss. Apr. 26, 2019).

Neither Plaintiffs nor Defendant here have presented evidence that the challenged conduct has either continued or ceased. However, this does not strike the Court as an effective standard. For one, the timing is questionable. If a plaintiff is required to show that there has been some *post-suit* attempt to unlawfully contact him in order to secure an injunction, then a plaintiff would be unable to request injunctive relief in their initial pleading. This would restrict the statute's cause of action and likely run counter to the "congressional policy as expressed in the relevant statute." *Marine Shale Processors*, 81 F.3d at 1360. This is partially why all that is required is "facts from which the continuation of the dispute may be *reasonably inferred.*" *Bauer*, 341 F.3d at 358 (emphasis added).

**\*7**  That said, it is likely true that the timing and number of challenged calls, on their own, do not show "a sufficient likelihood that [Plaintiff] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Plaintiff must show something more. In data-breach cases, for example, which revolve around similar concerns of future conduct (to wit, the unlawful usage of one's data, in this case one's phone number), some courts have found that evidence of "ongoing retention of the data collected from private messages meant that there was a risk that it would resume using the [plaintiffs'] data." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020); *Bell v. Hawx Servs., LLC*, No. 2:24-CV-00825-DC-DMC, 2025 WL 2533371, *4 (E.D. Cal. Sept. 3, 2025); *but see Williams v. Singing River Health Sys.*, No. 1:24-CV-24-HSO-MTP, 2025 WL 2487792, at *11 (S.D. Miss. Aug. 28, 2025) (collecting cases that find the risk of future data breach still too speculative when the defendant "retains [plaintiff's] data" but has not improved their data security since the breach).

This Court need not decide what that "something more" is now. Plaintiff's current pleadings do not present sufficient factual material regarding imminence one way or another,

much less to carry his injunctive-relief burden — indeed, Plaintiff does not even argue that he is in imminent threat of future unlawful text messages from Fiesta Nissan at all. Rather, Plaintiff's argument focuses solely on past harm. *See* Dkt. No. 25, at p.13–14. Plaintiff's pleadings and response do not argue that Defendant still retains Plaintiff's phone number, nor do they explain exactly how many messages he received from Defendant before suit.

Because § 227(c)(5)(A) does not, "in so many words, or by a necessary and inescapable inference, restrict[ ] the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Weinberger*, 456 U.S. at 313, 102 S.Ct. 1798. Plaintiff still must, therefore, "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer*, 341 F.3d at 358. In other words, although there is enough to present a claim for damages, Plaintiff cannot rely on the bare statutory violation to establish the presence of likely future harm.

Defendant's motion to dismiss Plaintiff's prayer for injunctive relief is granted, and said claim is dismissed without prejudice.

## CONCLUSION

In sum, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's motion. Specifically, considering the plain language of the statute, this Court finds that "telephone calls" in the context of § 227(c)(5) include text messages; Defendant's motion to dismiss for lack of capacity to sue is **DENIED**. Otherwise, the Court finds that Plaintiff has not presented sufficient facts to establish that there is a substantial likelihood that he will suffer the same injury in the future. Defendant's motion to dismiss Plaintiff's claim for injunctive relief is **GRANTED**, and said injunctive claim is **DISMISSED WITHOUT PREJUDICE.**

SO ORDERED January 26, 2026, at McAllen, Texas.

**All Citations**

Slip Copy, 2026 WL 202930

Footnotes

**Alvarez v. Fiesta Nissan, Inc., Slip Copy (2026)**

2026 WL 202930

Congress passed the Telephone Consumer Protection Act (TCPA) in 1991, which in relevant part gave broad authority to the FCC to "evaluate alternative methods and procedures"—including the creation of a "do not call" registry—"to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to promulgate rules and regulations to implement that protection. 47 U.S.C. § 227(c)(1)(A)–(E). The National Do-Not-Call Registry was created in 2003 pursuant to that Act. *See* 47 C.F.R. § 64.1200(c)(2).

"The world's very first text message, sent Dec. 3, 1992, was a cheerful, if early, holiday greeting: 'Merry Christmas,' it read, short and sweet." *Jones v. Blackstone Med. Servs., LLC,* 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) (quoting Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/)

*See, e.g., Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Cranor v. 5 Star Nutrition, L.L.C.,* 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *Breda v. Cellco P'ship,* 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communications, such as text messages."); *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.,* 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls.").

This issue has been addressed by courts across several other Circuits, including in the Ninth Circuit. *See e.g., Esquivel v. Mona Lee, Inc.,* 2025 WL 3275607, at *2 (S.D. Cal. Nov. 24, 2025). As Defendant points out, it is important to note that Ninth Circuit cases are different; they often rely on *Satterfield v. Simon & Schuster, Inc.,* which, rather than fully defer to the FCC's interpretation, arguably decided the issue based on the statutory language. 569 F.3d 946, 953 (9th Cir. 2009) ("[W]e look to the ordinary, contemporary, and common meaning of the verb 'to call.' "). This approach partially saves it from *Loper Bright.*

The countervailing argument, however, is that § 227(c)(5)'s implementing regulations specifically state that they are "applicable to any person or entity making telephone solicitations or telemarketing calls *or text messages* to wireless telephone numbers to the extent described in the Commission's Report and Order." 47 C.F.R. § 64.1200(c). The language of that regulation, as well as the robust precedent holding the same, *see* supra at n.3, counsels this court to proceed under the assumption that the FCC has interpreted § 227(c)(5) to include text messages.

"The biggest blow came when Motorola, whose beepers account for more than 80 percent of the market, said that it would stop making one-way and some two-way pagers this summer and concentrate on messaging devices for wireless telephone networks instead." Jeffrey Selingo, *The Bell Is Tolling For the Beeper*, N.Y. TIMES, April 11, 2002

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.