UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARK W. DOBRONSKI,<br><br>Plaintiff,<br><br>v.<br><br>TONY PACKO'S TOLEDO, LLC,<br><br>Defendant. | Case No. 25-cv-13117<br><br>Honorable Robert J. White |

**ORDER GRANTING MOTION TO DISMISS**

This class-action case involves Plaintiff Mark W. Dobronski's claims against Defendant Tony Packo's Toledo, LLC for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (ECF No. 1). Before the Court is Defendant's motion to dismiss. (ECF No. 9). The Parties fully briefed the motion and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2). For the following reasons, the Court grants the motion and dismisses Plaintiff's claims with prejudice for the failure to state a claim.

## I. Background

This case essentially involves three unsolicited telemarketing text messages Defendant allegedly sent to Plaintiff's phone between May and September 2025, as

well as Defendant's alleged failure to provide the requisite caller identification with its telephone solicitations. (ECF No. 1, PageID.5-6, 10-11). According to the complaint, "Plaintiff's telephone number, (734) XXX-2300,[1] is a residential, non-commercial telephone number . . . use[d] . . . for personal, residential, and household reasons." (ECF No. 1, PageID.4). Plaintiff also alleges that his number has been listed on the National Do Not Call Registry (the DNC Registry) since 2003. (ECF No. 1, PageID.5). On behalf of himself and similarly situated parties, Plaintiff asserts two counts for violations of the TCPA pursuant to 47 U.S.C. § 227(c)(5), one for Defendant sending multiple text solicitations over a 12-month period to Plaintiff and similarly situated parties with phone numbers on the DNC Registry, and the second for Defendant failing to transmit the required caller identification with its solicitations. (ECF No. 1, PageID.9-12).

Defendant now moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that (1) Plaintiff lacks standing to pursue his claims, (2) Plaintiff fails to allege sufficient facts to establish a claim based on the text messages at issue, and (3) there is no private right of action concerning Defendant's alleged lack of caller identification. (ECF No. 9).

---

[1] Both parties essentially agree, as particularly relevant to the analysis of standing, that the text communications were sent to (734) XXX-2300—a number Plaintiff used, at least in the past, for his business(es).

## II. Legal Standards

"Article III standing is a question of subject matter jurisdiction properly decided under [Fed. R. Civ. P.] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017) (unpublished). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing [standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

The instant case, because Defendant's standing argument relies on evidence outside the pleadings to challenge the factual existence of subject matter jurisdiction, involves a factual attack. *See id.* at 759-60. "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.*

Further, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v.*

*Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.") (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. "But a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [a] defendant's motion so long as they are

referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. Analysis

Because a Court lacking jurisdiction cannot reach the merits of a case, the Court begins with the parties' arguments concerning standing. *See Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 764 (6th Cir. 2002) ("if a court does not have jurisdiction, *ipso facto*, it cannot address the merits of a case").

The Constitution requires that federal courts decide only "cases" and "controversies." U.S. CONST. art. III, § 2. Accordingly, courts can decide only "actual, ongoing" disputes between parties. *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014). One component of ensuring courts do not exceed their jurisdiction is standing.

If the plaintiff lacks standing, the case is not justiciable and cannot be heard in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing requires that the plaintiff "must have suffered an [1] injury-in-fact [2] that is fairly traceable to the defendant's conduct and [3] would likely be redressed by a favorable decision from a court." *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023). At issue here is whether Plaintiff suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560 (1992)).

In *Shelton v. Target Advance LLC*, No. 18-2070, 2019 U.S. Dist. LEXIS 64713 (E.D. Penn. Apr. 16, 2019) (*Shelton I*), the Eastern District of Pennsylvania dismissed the plaintiff's TCPA claims for lack of standing because he "has not suffered an injury-in-fact by way of receiving business-to-business robocalls on a phone number he registered on the National Do Not Call Registry." *Id.* at *15-18. Recognizing that the plaintiff used the phone number at issue for both personal *and* business matters, the Court specifically reasoned as follows:

> [B]ased on the record, the Court concludes that Plaintiff does not have standing to bring claims predicated on § 227(c)(3)(F)'s prohibition against sales calls to telephone phone numbers listed on the National Do Not Call Registry. The Phone Number is also for business use, and business numbers are not permitted to be registered on the National Do Not Call Registry. *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."); *cf.* 16 C.F.R. § 310.4(b)(1)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . intiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the 'do-not-call' registry[.]"); *id.* § 310.6(b)(7) (exempting from liability, "[t]elephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies."). Indeed, the website of the Federal Trade Commission ("FTC") regarding the National Do Not Call Registry features

> frequently asked questions, one of which is asked and answered as follows. "Can I register my business phone number or a fax number? The National Do Not Call Registry is only for personal phone numbers. Business-to-business calls and faxes are not covered." FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last visited Apr. 16, 2019). The FTC's website also has a page titled "Q&A for Telemarketers & Sellers About DNC ["Do Not Call"] Provisions in TSR ["Telemarketing Sales Rule"]," which states under the heading "Business-to-Business Calls," "Most phone calls to a business made with the intent to solicit sales from that business are exempt from the Do Not Call Provisions." https://www.ftc.gov/tips-advice/business-center/guidance/qa-telemarketers-sellers-about-dnc-provisions-tsr (last visited Apr. 16, 2019). Accordingly, because Plaintiff held the Phone Number out to the world as a business phone number, he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls, such as those giving rise to this action.

*Id.* at *3-4, 15-17.

Similarly, the Maryland District Court in *Worsham v. Disc. Power, Inc.*, 2021 U.S. Dist. LEXIS 1931 (D.C. Md. Jan. 6, 2021), cited *Shelton I* and applied essentially the same analysis to dismiss similar claims "because Worsham has held publicly that the subject phone number is a business phone number, [so] he cannot not register it with the DNC for purposes of avoiding business-to-business calls." *Id.* at *11-12. In *Worsham*, the plaintiff claimed that the number at issue was a residential landline, but he critically had provided the same number as belonging to a law office in an earlier lawsuit. *Id.* at 5.

Defendant here argues that the case must be dismissed for lack of standing pursuant to *Worsham* and *Shelton I* because Plaintiff's 2300 phone number at issue

was previously used for business, including in 2003 when it was purportedly registered on the DNC Registry, and thus could not have been properly registered as Plaintiff alleges. (ECF No. 9, PageID.45-46, 51-54; ECF No. 125, PageID.160-62). Defendant provides multiple complaints from earlier federal cases Plaintiff or his business filed in 2019 and 2020 that alleged the same number was used as a business line for the Adrian & Blissfield Rail Road Company (A&B RR). (*See* ECF No. 9-2). Defendant additionally provides weblinks and public records to show that the same number was also listed as the contact for Teletech, Inc. (Teletech). (*See* ECF No. 9, PageID.46; ECF No. 15-1 – 15-2).

Indeed, the facts of a case Plaintiff filed in this district in 2018 support that Plaintiff's number was previously used as a business line for both A&B RR and Teletech. *See Dobronski v. Alarm Mgmt. II, L.L.C.*, No. 18-11055, 2020 U.S. Dist. LEXIS 215666, at *3 (E.D. Mich. Nov. 18, 2020) ("On or about October 25, 2017, an EAM representative placed a phone call to [Teletech] at (734) [XXX]-2300 . . . . Teletech is a for-profit company owned and operated by Plaintiff and his wife, Susan Dobronski. The audio recordings showed that Plaintiff did not answer the call. A woman answered the phone and stated, 'Good afternoon, A&B Railroad.' Further, she clarified that the telephone number called was for both the A&B Railroad and Teletech. A&B Railroad is another for-profit corporation run by Plaintiff and his wife.") (record citations omitted).

Plaintiff concedes that his number in this case was previously used for A&B RR's police department. But Plaintiff declares under penalty of perjury that he (1) "sold the railroad and retired" on August 9, 2021; (2) "returned the number to [his] own personal use in early 2022"; and (3) "h[as] not used the number for business purposes or business use since at least early 2022." (ECF No. 13-1, PageID.139-40). Plaintiff further declares that "th[e] number is used for personal, family, and household purposes. I do not use it for business purposes or business use at all." (ECF No. 13-1, PageID.139-40; *see also id.* at PageID.140 ("[The number] has thus remained [in personal use] since [early 2022], and I use it to communicate with friends, family, and acquaintances.")). Plaintiff therefore argues that he essentially regained standing to assert DNC Registry-based claims as soon as he retired and started using the number solely for residential, household, and personal matters, likening the circumstances to those in *Shelton v. Pro. Source Lending Grp. LLC*, 24-4394, 2025 U.S. Dist. LEXIS 46534 (E.D. Penn. Mar. 14, 2025) (*Shelton II*). (ECF No. 13, PageID.115-20).

In *Shelton II*, the same plaintiff with the same phone number as in *Shelton I* filed suit against different defendants, again asserting claims premised on the prohibition against calling numbers on the DNC Registry. *Shelton II*, 2025 U.S. Dist. LEXIS 46534 at *2-6. As relevant here, the Court concluded that (1) the plaintiff stated a plausible claim and (2) *Shelton I* did not preclude the lawsuit. *Id.* at *6-10.

The Court first concluded that the plaintiff stated a plausible claim given the following:

> Plaintiff purports to have registered his residential number on the NDNC [the DNC Registry] in 2015, a full year prior to starting his business. Plaintiff also represents that he exclusively uses his number for personal purposes and has done so since at least 2019. Defendants have not presented any evidence to contradict Plaintiff's representation of his behavior over the past five years. Even if Plaintiff used his number for mixed purposes prior to 2019, NDNC registrations must be honored indefinitely, and the FCC has indicated that business numbers are not removed from the Registry. *See, e.g. National Do Not Call Registry FAQs*, FTC Consumer Advice, https://perma.cc/NVC5-ZNR5 ("No, your registration will never expire. The FTC will only remove your number from the Registry if it's disconnected and reassigned, or if you ask to remove it."). Given these regulations, Plaintiff's personal residential phone number is presumptively still on the NDNC.

*Id.* at *7-8.

Next, concerning *Shelton I*, the Court reasoned as follows:

> As noted above, once registered, numbers are not removed from the NDNC, and five years have lapsed since the [*Shelton I*] decision. In 2019, the phone number at issue was used for both business and personal purposes. In this action, filed in 2024, Plaintiff pleads that it is used exclusively for personal use, and has not been used for business purposes since 2019. In that respect, the issue here differs from the issue decided against Plaintiff in [*Shelton I*]. And Defendants point to no legal authority supporting a conclusion that past commercial use of a number permanently eliminates standing where the number continues to be listed on the NDNC.[5] Conceptually, there is a temporal aspect to standing, as illustrated by the fact that in some cases standing is deemed not to exist because the injury alleged is hypothetical, and in other instances a case allowed to proceed is later dismissed as circumstances change.

---

> [5] On the facts as pleaded, this is not a case where Plaintiff's number was clearly a business number at the time when he registered it on the NDNC in 2015, which may raise a question as to whether his registration was void *ab initio*. Plaintiff instead asserts that he created the number and registered it on the NDNC in 2015 as a "residential telephone subscriber," "years prior" to forming his business in 2016, making his registration presumably proper.

*Id.* at *9-10, 10 n. 5.

As an initial matter, all three of these cases on which the parties' principally rely concerning standing are out-of-circuit district court cases that are not binding here. Further, only *Shelton I* explicitly evaluated the case (and the specific issue concerning business use of a number on the DNC Registry) under the standing doctrine. In contrast, *Shelton II* only discussed standing tangentially to distinguish *Shelton I*, and its substantive decision involved whether the plaintiff stated a plausible claim for relief under § 227(c). And *Worsham* similarly addressed whether the plaintiff stated a plausible claim for the purpose of Rule 12(b)(6).

That clarified, the Court concludes that the parties' standing arguments and the issue of past business use for Plaintiff's number reaches the merits of this case. This is particularly so where (1) the TCPA's statutory text and the FCC regulations' do-not-call ("DNC") provisions specify that a plaintiff must be a "residential telephone subscriber," 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c), (d); (2) FCC regulations define "residential subscriber" as "not a business subscriber," 47 C.F.R. § 64.2305(d), and (3) business numbers are not permitted to be registered on the

DNC registry, *see Worsham*, 2021 U.S. Dist. LEXIS 1931 at *10; *Shelton I*, 2019 U.S. Dist. LEXIS 64713 at *15-16.

Moreover, "a district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek Bldg. Prods. V. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "If, on the other hand, an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (citation omitted; emphasis in original).

Accordingly, the Court here finds that jurisdiction exists,[2] and it will address the parties' arguments and authority concerning past business use as a merits issue

---

[2] Regardless of whether and to what extent Plaintiff previously used the number at issue for business, he nevertheless alleges the type of unsolicited communication and invasion of privacy that various circuit courts hold constitutes an injury in fact under the TCPA. *See Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1221 (9th Cir. 2022) ("We have previously considered what constitutes an injury under the TCPA for purposes of Article III. We wrote . . . that in enacting the TCPA, Congress established the substantive right to be free from certain types of phone calls and texts absent consumer consent . . . and identified unsolicited contact as a concrete harm.") (cleaned up); *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93 (2nd Cir. 2019) ("Nuisance and privacy invasion were the harms Congress identified when enacting the TCPA. And text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same nuisance and privacy invasion envisioned by Congress when it enacted the TCPA.") (cleaned up). While Defendant contests the validity of Plaintiff's purported DNC

under Rule 12(b)(6). And setting aside standing, the Court still finds the interplay between *Worsham*, *Shelton I*, and *Shelton II* instructive to resolve this matter.

First, the facts here are somewhat analogous to those in *Shelton II*, where the Court concluded that the plaintiff stated a plausible claim under § 227(c). Plaintiff alleges that his number (1) "is a residential, non-commercial telephone number" used "for personal, residential, and household reasons"; (2) "has been listed on the National Do Not Call Registry since 2003"; and (3) "is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered." (ECF No. 1, PageID.4-5).

Critically, however, Plaintiff's allegation concerning the number's eligibility for registration in 2003 (and implicitly establishing the validity of the 2003 registration) is completely discredited by the public records Defendant provides in this case. *See Cagayat v. United Collection Bureau, Inc*, 952 F.3d 749, 755 (6th Cir. 2020) ("For . . . exhibits to contradict the pleadings, the exhibits must 'utterly discredit' the allegations central to [the plaintiff's] claim."). Specifically, Defendant provides public records proper for consideration at the 12(b)(6) stage to show that the 2300 number was used as a business contact for Teletech as early as 2001 and continuing through 2003 (*see* ECF No. 15-1 – 15-2 (2001 FCC License and 2003

---

registration, it does not dispute that his privacy was invaded by the unsolicited text messages at issue.

Teletech Financial Report Excerpt)), *before* Plaintiff's purported registration. And Defendant's other public records from Plaintiff's previously-filed cases show the number was still used for Plaintiff's business(es) through at least 2020.

Thus, unlike in *Shelton II*, the facts here show that Plaintiff's number *was* clearly a business number at the time when he allegedly registered it on the DNC Registry in 2003. Importantly, *Shelton II*'s analyses (1) finding a plausibly-alleged claim and (2) distinguishing *Shelton I* both relied on the plaintiff having registered his number well before starting the business at issue, which is not the case here. The Court therefore finds *Shelton II* distinguishable from the instant case and concludes based on Defendant's public records that Plaintiff's purported 2003 registration was void *ab initio*. *Contra Shelton II*, 2025 U.S. Dist. LEXIS 46534 at *10 n. 5 (given the facts, the initial DNC registration was "presumably proper"); *see also Worsham*, 2021 U.S. Dist. LEXIS 1931 at *10 ("business numbers are not permitted to be registered on the DNC registry"); *Shelton II*, 2019 U.S. Dist. LEXIS 64713 at *15-16 ("business numbers are not permitted to be registered on the National Do Not Call Registry").

Ultimately, unlike in *Shelton II* but analogous to the circumstances in *Worsham*, Plaintiff's allegations that the number at issue was a residential landline properly registered on the DNC Registry cannot be credited, even at this stage, in light of the clear past business use dating back even before the number was

purportedly registered. The Court therefore declines to apply in this case the general presumption that numbers on the DNC Registry are presumed to be residential. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14038 ¶ 36 (2003).

Having concluded that Plaintiff did not properly register the relevant phone number on the DNC Registry in the first instance in 2003, the Court concludes that he fails to state any claim related to § 227(c)(5). The Court therefore declines to address Defendant's alternate bases for dismissal.

* * *

For the reasons given, the Court ORDERS that Defendant's motion to dismiss (ECF No. 9) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's claims are DISMISSED WITH PREJUDICE for the failure to state a claim.

Dated: October 2, 2026

s/Robert J. White
Robert J. White
United States District Judge